REVISED JULY 15, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 31, 2005**

Charles R. Fulbruge III
Clerk

_____

No. 04-30089
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

LAWRENCE CLYDE BRINGIER, JR, also known as Junior, also
known as Bread

Defendant - Appellant

_____

Appeal from the United States District Court
for the Middle District of Louisiana, Baton Rouge
No. 01-172-D

_____

Before KING, Chief Judge, and JOLLY and DENNIS, Circuit Judges.

PER CURIAM:

On August 26, 2003, a jury convicted Lawrence Clyde
Bringier, Jr. of one count of conspiracy to distribute more than
five kilograms of cocaine under 21 U.S.C. § 846, two counts of
money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C.
§ 2, and one count of structuring transactions to evade reporting
requirements under 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2. At
sentencing, the district court set Bringier's base offense level
on the narcotics count at thirty-eight, calculating the amount of
drugs at 120 kilograms of cocaine and two kilograms of cocaine

base (crack).  Pursuant to the Presentence Report (PSR),
Bringier's base offense level for each count included two levels
for obstruction of justice.  In addition, the court enhanced
Bringier's base offense level by two levels on the narcotics and
money laundering counts because of his role as a leader or
organizer.  The district court then sentenced Bringier to 360
months imprisonment on the conspiracy count, 240 months
imprisonment on each of the money-laundering counts, and sixty
months imprisonment on the structuring-transactions-to-evade-
reporting-requirements count, to run concurrently.  Bringier now
appeals his conviction and sentence, alleging various errors by
the district court.  Addressing each of these alleged errors in
turn, we AFFIRM.  We address Bringier's challenges to his
conviction in summary fashion.  We give more fulsome treatment to
his Booker-based challenge to his sentence.  United States v.
Booker, 125 S. Ct. 738 (2005).

    First, the district court did not err by deciding not to
quash the indictment for violation of the Kastigar principle
because Bringier waived his right to a Kastigar hearing.  See
Kastigar v. United States, 406 U.S. 441 (1972). In May 2000,
Bringier's wife and stepdaughter were kidnapped and murdered.  In
connection with an ensuing investigation, the government granted
Bringier testimonial immunity in return for information he might
have regarding his family's death.  In a letter to Bringier's
attorney, Thomas D'Amico, the government confirmed the oral

2

immunity agreement and noted two conditions to the agreement: (1) that Bringier must tell the complete truth; and (2) that Bringier agreed to relieve the government of the derivative evidence burden of proof arising from Kastigar.  See id.

On October 31, 2001, Bringier was charged in a superceding indictment with, inter alia, conspiracy to distribute more than five kilograms of cocaine, money laundering, and structuring transactions to evade reporting requirements.  On July 3, 2003, Bringier filed a motion for a Kastigar hearing, requesting that the government show that it did not use his immunized statements or the fruits of those statements to develop either the indictment or the evidence sought to be introduced at trial. Bringier asked the district court to suppress the immunized testimony and any evidence derived therefrom and to dismiss the indictment in the event the government was unable to meet its burden.  The government opposed the defendant's motion, arguing, inter alia, that Bringier had waived his right to a Kastigar hearing in the immunity agreement.

On August 12, 2003, the district court held a hearing on Bringier's motion.  At the hearing, the government presented two witnesses: Federal Bureau of Investigation Special Agent Roger White and Bringier's former attorney, Thomas D'Amico.[1]  Both

---

[1]     D'Amico withdrew from representing Bringier approximately two months after Bringier's arraignment on the narcotics and money laundering charges when he learned that his former client, Ken Barrow, was identified by the government as a prosecution witness.

witnesses testified that Bringier entered into the immunity agreement described in the government's letter which specifically stated that Bringier waived his right to a Kastigar hearing. At the conclusion of the hearing, the district court denied Bringier's Kastigar motion, reasoning that Bringier had waived his right to such a hearing.

On appeal, Bringier argues that his Sixth Amendment right to conflict-free representation was violated because D'Amico had a conflict of interest, and thus that D'Amico's testimony should be struck and the case should be remanded to the district court for another hearing on his Kastigar motion. Specifically, Bringier argues that the district court erred in failing to take into account D'Amico's conflict of interest. Bringier claims that after D'Amico withdrew from representing him in the present case, D'Amico began representing James Eugene Warner, III, one of Bringier's co-defendants. Bringier also claims that D'Amico had previously represented Ken Barrow,[2] a cooperating informant who ultimately testified against Bringier at trial. D'Amico represented Barrow in 1998 and in 2000 during the time D'Amico was representing Bringier.

We disagree with Bringier's contention that D'Amico

_____

[2]    Bringier appears to confuse Ken Barrow with Lawrence Harvey, and thus incorrectly states in his brief that D'Amico represented Lawrence Harvey.

testified at the hearing while laboring under a conflict of interest. The timeline of this case is indicative: When Bringier entered into the immunity agreement, D'Amico (who was then representing him) no longer represented Barrow and did not yet represent Warner. D'Amico could not have known at that time that Barrow, his former client, would become a prosecution witness in the case against Bringier, nor could he have known that at some point in the future he would represent Warner in a case where Bringier would be his co-defendant. Similarly, at the time of the hearing on the Kastigar motion, D'Amico no longer represented Bringier and did not attend the hearing in a representative capacity. D'Amico's role in the hearing was to provide factual, non-privileged testimony regarding the waiver of the Kastigar hearing. In addition, the only case Bringier cites in support of his claim that D'Amico had a conflict of interest, United States v. Newell, 315 F.3d 510 (5th Cir. 2002), is clearly distinguishable from the present case. In Newell, a lawyer simultaneously represented two defendants at trial and chose to sacrifice one of his clients to save the other. Id. at 518-19. Conversely, in the present case, D'Amico never represented two clients with conflicting interests at the same time. In addition, it is worth noting that the district court specifically found D'Amico's testimony credible. The district court stated:

> Let me say at the outset, I have known Mr. D'Amico for many years. I not only know of him by reputation, but I have had him appear in this court on a number of

5

occasions.  He has a representation [sic], not only with me, but I think among the criminal law community and the legal community in this area and in this state of being a premier criminal law attorney.

Thus, Bringier's claim that D'Amico labored under a conflict of interest has no merit.

Moreover, even assuming arguendo that D'Amico did have a conflict and that his testimony should have been stricken, the district court still had ample evidence to find that Bringier had waived his right to a <u>Kastigar</u> hearing.  First, Special Agent Roger White also testified to the terms of the immunity agreement.  Second, the letter memorializing the immunity agreement was also introduced as evidence.  Accordingly, the district court did not err in finding that Bringier waived his right to a <u>Kastigar</u> hearing and thus did not err by refusing to quash the indictment.

Second, the district court did not err by denying Bringier's motion for acquittal based on insufficiency of the evidence. With regard to the conspiracy to distribute narcotics conviction, the government introduced sufficient evidence demonstrating Bringier's role in the conspiracy: various witnesses testified and the government presented additional evidence corroborating the testimony (e.g., phone records and drugs that were seized). There was also ample evidence that Bringier engaged in money laundering.  Specifically, there was evidence that Bringier used a nominee to purchase a car and a house with the proceeds of an

unlawful activity and that he made an effort to conceal that he was the real purchaser. Finally, the evidence showed that Bringier was indeed structuring transactions to evade reporting requirements. There was evidence of Bringier's pattern of bank deposits, his wife's knowledge of the reporting requirements, and his knowledge that depositing over $10,000 would require additional paperwork. There is no doubt that a rational trier of fact could have found that this evidence established Bringier's guilt beyond a reasonable doubt on all counts on which he was convicted. We therefore hold that the evidence was sufficient to support Bringier's conviction and that the district court did not err by denying Bringier's motion for acquittal.

Third, the district court did not err by denying Bringier's motion for a mistrial on the basis that several witnesses made references to the deaths of his wife and stepdaughter while testifying. There is no significant possibility that the references to his family's death (i.e., the statements that "an accident happened in [Bringier's] life," "the funeral services of [Bringier's] wife," and "right before [Bringier's] family got killed") substantially impacted the jury's verdict in light of the entire record. The evidence of Bringier's guilt--as stated above--was overwhelming, making the references Bringier complains of harmless. Thus, the district court did not abuse its discretion by denying Bringier's motion.

Fourth, the district court did not err by denying Bringier's

motion for a mistrial on the basis that evidence related to a shipment of over 200 kilograms of cocaine was introduced at trial. First, the government never promised Bringier that it would not introduce this evidence against him. Second, Bringier failed to object timely to the introduction of the evidence. Finally, as the district court noted, this evidence was not prejudicial to Bringier since other witnesses testified that "many, many kilos of cocaine . . . were directly distributed to this defendant." Hence, the district court did not abuse its discretion by denying Bringier's motion.

Fifth, we reject Bringier's argument that the district court erred by allowing the verdict to stand in light of the cumulative errors that occurred during trial. Having concluded that the district court did not commit the errors alleged by Bringier, we find that the cumulative error doctrine is simply inapplicable. United States v. Villarreal, 324 F.3d 319, 328 (5th Cir. 2003). Thus, the district court did not err by allowing the verdict to stand.

Finally, Bringier makes two arguments with regard to his sentence. First, Bringier argues that the district court erred by imposing a two-level enhancement to his base offense level in the narcotics and money-laundering convictions under the UNITED STATES SENTENCING GUIDELINES §3B1.1 [hereinafter U.S.S.G. or the Guidelines]. Specifically, Bringier argues that the evidence at trial did not support a finding by the district court that he was

a leader or organizer in the drug or money laundering schemes. The evidence presented at trial shows that Bringier was a leading player in a major drug conspiracy. There was evidence at trial that: (1) Bringier alone bought and sold approximately $12,200,000 worth of cocaine; (2) Bringier used Jamar Rucker as a courier to transport hundreds of thousands of dollars and approximately 100 kilograms of cocaine; (3) Bringier hired cooks to convert the cocaine he purchased into crack; and (4) Bringier paid Ken Barrow to use his house to cook cocaine. Based on this evidence, the district court's determination that Bringier was a leader or a organizer of the drug conspiracy was not clearly erroneous.[3] The evidence presented at trial also shows that Bringier was a leader or organizer in the money-laundering schemes. There was evidence that Bringier recruited Leonard Foreman, paid him $5,000 to purchase the Worthey Road property, and continued to exercise control over him by using him as an intermediary with respect to the property. The evidence also showed that Bringier recruited Lawrence Jackson to buy a Corvette in Jackson's name for Bringier's use and that Bringier directed Jackson's actions with regard to the purchase, a process that took considerable effort because of Jackson's poor credit rating. Bringier not only used Foreman and Jackson, but he recruited

---

[3] Both parties agree that we review the judge's factual findings for clear error. Accordingly, we assume without deciding that clear error is the proper standard post-Booker.

9

them, got them to participate in his money laundering schemes, exercised control over them, and then continued to direct their activities in connection with these schemes.  Therefore, we hold that the district court's determination that Bringier was a leader or organizer in the money-laundering schemes was not clearly erroneous.  Accordingly, the district court did not err by imposing a two-level enhancement to Bringier's base offense level in the narcotics and money laundering convictions.

Bringier next argues, for the first time on appeal, that his sentence is illegal under Blakely v. Washington, 125 S. Ct. 21 (2004).  While Bringier's case was pending before this court, the Supreme Court decided Booker, 125 S. Ct. at 738.  In Booker, the Supreme Court held that when a sentencing judge bound by mandatory guidelines increased the sentencing range under the Guidelines based on facts (other than the fact of a prior conviction) not found by the jury or admitted by the defendant, the sentence violated the defendant's Sixth Amendment right to a jury trial.  125 S. Ct. at 756.  In light of the Supreme Court's decision in Booker, we requested supplemental briefing from the parties.  In his supplemental brief, Bringier concedes that his objections to the PSR and his sentence were not expressed in terms of Blakely or the Sixth Amendment.  Nevertheless, Bringier argues that his objections below capture the essence of Blakely and the Sixth Amendment, and thus that this court should consider the issue preserved for review.  However, Bringier did not make a

Blakely or a Sixth Amendment argument below, and we decline Bringier's suggestion that we consider his arguments below in the "essence" of Blakely and the Sixth Amendment. Accordingly, we review Bringier's sentence for plain error. See Booker, 125 S. Ct. at 767; United States v. Mares, No. 03-21035, 2005 WL 503715 (5th Cir. March 4, 2005).

Under the plain error review standard we have "a limited power to correct errors that were forfeited because [they were] not timely raised in the district court." United States v. Olano, 507 U.S. 725, 731 (1993). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is (1) error, (2) that is plain, and (3) that affects substantial rights." Mares, 2005 WL 503715, at *8 (citing United States v. Cotton, 535 U.S. 625, 631). "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

With regard to plain-error review, Bringier argues that it was plain error for the district court to enhance his sentence using facts not found by a jury in violation of his Sixth Amendment right. The district court enhanced Bringier's sentence pursuant to its findings that Bringier was a leader or organizer in the narcotics and money-laundering schemes, that Bringier had distributed 120 kilograms of cocaine and two kilograms of crack

11

cocaine (rather than five to fifteen kilograms of cocaine) in the narcotics scheme, and that he had obstructed justice on all counts. Bringier contends that these errors affected his substantial rights because the sentencing range for each count of which he was convicted was higher than it otherwise would have been absent those findings.

The first prong of the plain error test is satisfied in this case. Under the mandatory guideline system in place at the time of sentencing, Bringier's sentence was enhanced based on findings made by the judge that went beyond the facts admitted by the defendant or found by the jury. Bringier has therefore established Booker error. Because of Booker, the error is also plain. Mares, 2005 WL 503715, at *11 (citing Olano, 507 U.S. at 734 and Johnson v. United States, 520 U.S. 461, 468 (1997)). The third prong, however, is not satisfied in this case. Bringier has failed to show that the error affected his substantial rights. The standard for determining whether an error affects substantial rights requires that the error affected the outcome of the district court's proceedings. Mares, 2005 WL 503715, at *8 (citing Olano, 507 U.S. at 734). To meet this standard, Bringier bears the burden of demonstrating a probability sufficient to undermine confidence in the outcome. Id. (citing United States v. Dominguez Benitez, 124 S. Ct. 2333, 2340 (2004)). Since the error here was the district court's use of extra verdict enhancements to reach a sentence under Guidelines

12

that the judge believed to be mandatory, the question is whether

Bringier has demonstrated that the sentencing judge would have

reached a different result had it sentenced Bringier under an

advisory scheme rather than a mandatory one.  Mares, 2005 WL

503715, at *9.  Based on the record before us, we do not know

what the trial judge would have done had the Guidelines been

advisory.  Bringier has pointed to nothing in the record

indicating that the sentencing judge would have reached a

different conclusion under an advisory scheme.[4]  Bringier's mere

---

[4]    Out of an excess of caution, but not out of any
obligation to do so, we have reviewed the sentencing hearing
transcript and found that the judge made some remarks regarding the
sentence he imposed.  The sentencing judge specifically stated:

> I do not know that the testimony at the trial ever made
> it, nailed it down, but I suspect--and I think you
> probably suspect as well--that your activities led to the
> death of your wife and child.  I just think it is, you
> know, a tragedy, you know, a waste of a young man that
> could have been many things.
> I do not know what to tell you other than this is the--
> even though it is a harsh sentence of 30 years, that is
> the lowest sentence that I could give you.  Your
> convictions on these counts could have carried a life
> sentence, but I do not see any reason to sentence you
> beyond the minimum.

The Eleventh Circuit has recently decided a case in which it
found that the defendant met his burden under the third prong of
plain-error review.  United States v. Shelton, No. 04-12602, 2005
WL 435120 (11th Cir. Feb. 25, 2005).  In Shelton, the court
considered the statements made by the sentencing judge, writing:

> The district court during sentencing expressed several
> times its view that the sentence required by the
> Guidelines was too severe, and noted that "unfortunately"
> Shelton's criminal history category under the Guidelines
> was based on his past charges rather than on the actual
> nature of the crimes as reflected in the sentences

13

assertion that his sentence would have been lower absent the extra verdict enhancements fails to suffice.  Under these circumstances, Bringier has failed to carry his burden of demonstrating that the result would likely have been different had the judge been sentencing under the post-<u>Booker</u> advisory regime rather than the pre-<u>Booker</u> mandatory regime.  Accordingly, we find no plain error and affirm Bringier's sentence.

For the foregoing reasons, we AFFIRM Bringier's conviction and sentence.

---

imposed in those cases. The district court not only sentenced Shelton to the lowest possible sentence it could under the Guidelines, 130 months, but also stated that sentence was "<u>more than appropriate</u>" in this case. All of these comments taken together convince us that there is a reasonable probability the district court would have imposed a lesser sentence in Shelton's case if it had not felt bound by the Guidelines.

<u>Shelton</u>, 2005 WL 435120, at *6 (emphasis added).

Unlike <u>Shelton</u>, the sentencing judge here did not lament over the sentence he imposed, nor did he state that the sentence is "<u>more</u> than appropriate" or "<u>too</u> severe."  Instead, he merely acknowledged the sentence was harsh.  In addition, the fact that the sentencing judge imposed the minimum sentence under the Guideline range (360 months) alone is no indication that the judge would have reached a different conclusion under an advisory scheme. <u>Mares</u>, 2005 WL 503715, at *9.  Accordingly, the sentencing judge's statements in this case are not sufficient to raise a reasonable probability that he would have reached a different conclusion under an advisory scheme.  Therefore, Bringier would not have met his burden under the third prong of plain-error review even had he pointed to the sentencing judge's remarks.

14