United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 21, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-50581

_____

UNITED STATES OF AMERICA
Plaintiff-Appellee

v.

JUAN PABLO MONTES-NUNEZ
Defendant-Appellant

_____

Appeal from the United States District Court
for the Western District of Texas
(No. DR-03-CR-833)

_____

Before BARKSDALE and CLEMENT, Circuit Judges, and ENGELHARDT, District Judge.[*]

KURT D. ENGELHARDT, District Judge:[**]

Juan Pablo Montes-Nunez pled guilty to, and was convicted of, a charge of illegally

re-entering the United States in violation of 8 U.S.C. §1326. Because Montes-Nunez had been

deported after a prior felony conviction for a crime of violence, 16 levels were added to his base

offense level in calculating the applicable imprisonment range under the United States Sentencing

Guidelines (the "Guidelines"). Montes-Nunez argues that, if not bound to apply the Guidelines, the

_____

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to **5th Cir. R. 47.5**, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in **5th Cir. R.
47.5.4.**

1

district court would have imposed less than the 77 months imprisonment to which he was sentenced. Because his prior conviction was not alleged in the indictment, Montes-Nunez additionally argues, to preserve the issue for review by the United States Supreme Court, that his sentence violates the constitutional principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Having carefully reviewed the record and the parties' submissions, pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005), we vacate the sentence imposed and remand for re-sentencing. Given binding circuit precedent, we find no *Apprendi* error and, thus, affirm that portion of the district court's ruling.

## FACTS AND PROCEEDINGS

Prior to being removed from the United States in 2003, Montes-Nunez was convicted of burglary of a habitation. In November 2003, he attempted to re-enter the United States without the permission of the Attorney General or the Secretary of Homeland Security. For that conduct, he was indicted on December 10, 2003, on a charge of illegally re-entering the United States in violation of 8 U.S.C. §1326. He pled guilty, without a plea agreement, on February 17, 2004.

Because Montes-Nunez was deported after a felony conviction for a crime of violence, 16 levels were added to his base offense level of 8. With a three-level acceptance of responsibility reduction, his total offense level was 21. His criminal history category was determined, over his objection, to be VI. The resulting sentencing range under the Guidelines was 77 to 96 months of imprisonment. The district judge sentenced Montes-Nunez, on June 7, 2004, to a prison term of 77 months, which was to "run consecutive[ly] to any other sentence." The district judge additionally "[found] no reason to depart from the sentence called for by the application of the guidelines inasmuch as the facts found [are] the kind contemplated by the sentencing commission."

At sentencing, Montes-Nunez's lawyer objected to the calculation of his criminal

2

history, arguing that three prior convictions were related and should be treated as one. The district court overruled the objection, stating that "what you are basically asking me to do is to reward your client because he couldn't keep his nose clean while out on bond." Rejecting the notion that the Guidelines would allow the three convictions to be treated as having been "functionally consolidated" in state court, the district judge explained that, to allow otherwise, would "reward[] recidivists for committing crimes while under supervision."

When the Court overruled the objection, Montes-Nunez's lawyer argued that even a sentencing range of 70-87 months, which would apply if the objection were sustained, would be "a lot of time simply for coming across the river." He accordingly urged the district court to "make the sentence fit the gravity of the crime." The exchange between defense counsel and the district judge continued as follows:

Mr. Newsome: . . . [H]e didn't come over here with a machine gun. He wasn't robbing. He wasn't killing.

The Court: I understand, Mr. Newsome. I understand what you are saying.

Mr. Newsome: He just crossed the political boundary.

The Court: I understand. But the problem is that Congress has said that crossing the political boundary when you are a convicted criminal alien is going to be a serious offense.

Mr. Newsome: I understand that, Your Honor. But thi s Court also has certainly the power and also is in a position to do justice here. And to make the sentence fit the gravity of the crime.

3

The Court:      I am not going to do it by perverting the guidelines because the sentence is very high for coming over illegally. I agree with you. This is an excessive sentence any way you cut it. However, it is not within my power to ignore the guidelines or the law just because I don't agree with the guideline ranges.

Mr. Newsome:    Well, I do agree that the sentence range here would be excessive. And I am basically presenting a technical argument to the Court that ameloriates the severe effect of the sentencing range and –

The Court:      I understand, Mr. Newsome.

Mr. Newsome:    I think there is a good argument that can be made that the guidelines could be applied in that way.

The Court:      But I would – what I would be doing is, I would be misapplying the guidelines. And that's what gives rise to the Protect [sic] and the Patriot Act. This is a misapplication of the guidelines to these laws. That's what is making Congress very angry about the courts. And that's why they are tightening it up. I would suggest, make this argument to Congress, see if they will change the laws. And I would support you in your request in terms of Congress.

However, I am not going to misapply the guidelines and get around the intent of Congress because I don't agree with the

4

sentencing range. And I think that they are personally excessive. I agree with you. They are excessive.

## ANALYSIS

**I.      Did the District Court commit plain error, under *United States v. Booker*, in sentencing Montes-Nunez based on a mandatory application of the Sentencing Guidelines?**

Citing the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005), Montes-Nunez asserts that *Fanfan* error occurred. In other words, he challenges his sentence on the basis that it was imposed pursuant to mandatory sentencing guidelines. *See United States v. Walters*, 418 F.3d 461, 463 (5th Cir. 2005) (differentiating between *Booker* error and *Fanfan* error*)*.

Because Montes-Nunez did not offer this objection in the court below, this court reviews it pursuant to the plain error standard. *United States v. Martinez-Lugo,* 411 F.3d 597, 600 (5th Cir. 2005). Under that standard, we can afford relief to Montes-Nunez only if: (1) error has occurred; (2) the error is plain; and (3) the error affects substantial rights. *United States v. Valenzuela-Quevedo*, 407 F.3d 728, 733 (5th Cir. 2005) (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002) (citation and internal quotation marks omitted)). If the three conditions are met, this court "may then exercise its discretion to notice a forfeited error but only if [it] seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Cotton*, 535 U.S. at 631 (citation and internal quotation marks omitted)). "Substantial rights" are sufficiently impacted if the error "affected the outcome of the district court proceedings." *Valenzuela-Quevedo*, 407 F.3d at 733 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

The Government concedes that the district court's treatment of the Guidelines as mandatory constitutes *Fanfan* error and that the error is plain. It disagrees, however, that the error

affects Montes-Nunez's substantial rights and that it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Specifically, the Government contends that Montes-Nunez has not borne his burden of demonstrating that the district court would have imposed a lower sentence if the Guidelines were understood to be advisory rather than mandatory.

Opinions from this court offering discussion of this issue have focused primarily on two considerations. *United States v. Rodriguez-Gutierrez*, – F.3d – , No. 04-30451, 2005 WL 2447908, at *1 (5th Cir. Oct. 5, 2005). The first is whether the judge's statements at sentencing indicated that he or she would have imposed a lesser sentence had he or she not treated the Guidelines as mandatory. *Id.* The second consideration is the relationship between the actual sentence imposed and the range of sentences provided by the Guidelines. *Id.* Although not always determinative, a sentence imposed at the minimum of the Guidelines range, when considered together with relevant statements by the sentencing judge indicating disagreement with the sentence imposed, is highly probative of whether a lesser sentence would have been imposed under advisory Guidelines. *Id.* at *3.

Our analysis in this matter is guided by this court's recent decisions in *United States v. Garcia*, 416 F.3d 440, 441 (5th Cir. 2005), *United States v. Pennell*, 409 F.3d 240, 245-46 (5th Cir. 2005), and *United States v. Bringier*, 405 F.3d 310, 317-18 & n.4 (5th Cir.), *cert. denied*, – U.S. –, 126 S. Ct. 264 (2005). In *Bringier*, the Court concluded that the sentencing judge's imposition of the minimum Guidelines sentence, and characterization of the sentence as "harsh," were not sufficient to satisfy the defendant's plain error burden. *Bringier*, 405 F.3d at 318 n.4. In reaching that determination, the court distinguished *United States v. Shelton*, 400 F.3d 1325 (11th Cir. 2005), in which the third prong of the plain error standard was satisfied. There, unlike in *Bringier*, the

6

sentencing court several times expressed its view that the Guidelines sentence was "too severe," lamented the manner in which criminal history is calculated under the Guidelines, and stated that the sentence imposed was "more than appropriate." *Bringier*, 405 F.3d at 318 n.4 (discussing *Shelton*, 400 F.3d at 1332-33).

In *Pennell*, the court found significant the sentencing judge's suggestion that "it might be better to sentence based on actual loss [rather than intended loss]." *Pennell*, 409 F.3d at 245-46. Taken with his statement that he felt "constrained" by the Guidelines (and the appellate courts' interpretation of them) to overrule the defendant's objection, this court found the defendant had adequately demonstrated, under the plain error standard, that the district judge would have selected a lower loss figure and, therefore, arrived at a lower sentence, if given the freedom to do so. *Id.* The court reached this result notwithstanding its recognition that the district court "may not have considered the sentence it imposed unjust." *Id.* at 246.

The plain error standard likewise was found satisfied in *Garcia*. There, the defendant was sentenced at the very bottom of the applicable Guidelines range. The sentencing judge also explained that he would "prefer to sentence [the defendant] to a lesser sentence than required under the guidelines." *Garcia*, 416 F.3d at 441.

In the instant case, the district judge's statements at sentencing, as set forth above, demonstrate a probability that a lesser sentence would have been imposed under an advisory Guidelines regime. This probability is " 'sufficient to undermine confidence in the outcome.' " *United States v. Mares*, 402 F.3d 511, 521 (5th Cir.) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 124 S. Ct. 2333, 2340 (2004)), *cert. denied*, – U.S. – , 126 S. Ct. 43 (2005). The sentencing judge repeatedly stated that the applicable Guidelines range was, in her opinion, excessive,

7

and that she did not agree with it. She further stated that she would support a request to Congress that a change be made. At the same time, the district judge repeatedly emphasized that she was bound by the Guidelines and would not resort to perverting their application, including the criminal history calculation, to allow a lower sentence. She did, however, impose the minimum term of imprisonment provided by the applicable Guidelines range.

The Government is correct that, although the district court imposed the minimum term of imprisonment, she found no reason to depart from that range. That finding, however, does not mean that the district court did not believe the applicable range otherwise excessive for this offense and this defendant. Rather, it meant only that there were no facts in existence that were different from the kind contemplated by the Sentencing Commission for this offense.

We likewise appreciate that the district judge emphasized Montes-Nunez's criminal history at sentencing, and ordered his sentence to run consecutive to any other sentence imposed. Indeed, the district judge's expressed concern for not "rewarding" a defendant who commits another criminal offense while out on bond may have been a factor in her order that Montes-Nunez's term of imprisonment be consecutive to any other sentence imposed. While it is probable that this concern likewise would have been a factor in the district judge's selection of an appropriate prison sentence under an advisory Guidelines regime, her other comments nonetheless sufficiently indicate that the resulting sentence, even if consecutive, likely would have been less than that imposed under the mandatory regime.

For the same reasons, the district court's error in imposing a sentence under a mandatory Guidelines regime seriously affects the fairness, integrity, or public reputation of judicial proceedings. Accordingly, Montes-Nunez's case shall be remanded for re-sentencing.

8

**II.    Is Montes-Nunez's sentence unconstitutional under *Apprendi v. New Jersey* because the indictment did not allege his prior conviction?**

A person convicted of a violation of 8 U.S.C. §1236(a) faces a statutory maximum term of imprisonment of 2 years. *See* 8 U.S.C. §1326(a). When that person was removed after being convicted of three or more prior misdemeanors, or an aggravated felony, however, higher penalties may be imposed. *See* 8 U.S.C. §§1326(b)(1) (ten years) and 1326(b)(1) (twenty years). Because his prior conviction was not alleged in the indictment, Montes-Nunez argues that his sentence of 77 months is unconstitutional under *Apprendi*. As Montes-Nunez concedes, however, this argument is foreclosed by circuit precedent. *See, e.g., United States v. Gutierrez-Ramirez*, 405 F.3d 352, 359 (5th Cir. 2005); *United States v. Sarmiento-Funes*, 374 F.3d 336, 345-46 (5th Cir. 2004). He raises it only to preserve the issue for Supreme Court review.

Unless and until the Supreme Court overrules *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), this court is bound by and must apply it. *See, e.g., United States v. Bonilla-Mungia,* 422 F.3d 316, 319-20 (5th Cir. 2005). Accordingly, we agree with the district court's ruling on this issue.

### CONCLUSION

Regarding the first issue presented for review, Montes-Nunez has satisfied the plain error standard in demonstrating a *Fanfan* error and, therefore, should be re-sentenced. The second issue presented for review, concerning the impact of *Apprendi* on *Almendarez-Torres*, is foreclosed by circuit precedent. Accordingly, although we AFFIRM the district court's *Apprendi* ruling, we VACATE Montes-Nunez's sentence, and REMAND the case for re-sentencing.