**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 6, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-50585
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE LUIS ROBLES-VERTIZ,

Defendant-Appellant.

- - - - - - - - - -
Appeal from the United States District Court
for the Western District of Texas, San Antonio
- - - - - - - - - -
ON REMAND FROM THE UNITED STATES SUPREME COURT

Before JONES, Chief Judge, JOLLY and WIENER, Circuit Judges.

WIENER, Circuit Judge:

This matter is before us on remand from the Supreme Court for reconsideration in light of <u>United States v. Booker</u>.[1]  At our request, the parties have commented on the impact of <u>Booker</u>.  We conclude that <u>Booker</u> does not affect the sentence received by Defendant-Appellant Jose Luis Robles-Vertiz.

### I.  FACTS AND PROCEEDINGS

Robles-Vertiz pleaded guilty to and was convicted of being in the United States illegally after removal, in violation of 8 U.S.C. § 1326(a).  Standing alone, a § 1326(a) offense carries a maximum penalty of two years' imprisonment and one year of supervised release.  Robles-Vertiz's § 1326(a) offense, however, did not stand

_____

[1] 543 U.S. 220, 125 S. Ct. 738 (2005).

alone: Prior to his removal from the United States, Robles-Vertiz had been convicted of an aggravated felony which, under 8 U.S.C. § 1326(b)(2), increased the maximum penalty for his § 1326(a) offense to 20 years' imprisonment and three years' supervised release. Robles-Vertiz's prior conviction also produced a 16-level increase in his offense level under the United States Sentencing Guidelines ("the Guidelines"), as a result of which his sentencing range was 46-57 months. The district court departed downward, lowering Robles-Vertiz's Criminal History Category from III to II, which resulted in a new sentencing range of 41-51 months. The court then sentenced Robles-Vertiz at the bottom of this new range, imposing a sentence of 41 months' imprisonment and three years' supervised release. Robles-Vertiz objected to the sentence on the ground that it exceeded the maximum authorized by § 1326(a), but the district court overruled his objection.

Robles-Vertiz then appealed his sentence to us, contending that his sentence exceeded the statutory maximum in violation of his rights under the Fifth Amendment's Due Process Clause, because the indictment charging him with a § 1326(a) violation did not separately state a § 1326(b) offense. In his brief on appeal, Robles-Vertiz acknowledged that precedent foreclosed that argument, but that he raised it to preserve possible Supreme Court review. We affirmed the district court's judgment in an unpublished opinion.[2]

---

[2] United States v. Robles-Vertiz, No. 04-50585, 110 Fed. Appx. 428 (5th Cir. October 21, 2004) (unpublished opinion).

2

Robles-Vertiz then petitioned the Supreme Court for a writ of certiorari.  After the Court handed down <u>Booker</u>, Robles-Vertiz filed a supplemental petition for certiorari in which, for the first time, he raised a <u>Booker</u> challenge to his mandatory Guidelines sentence.  The Supreme Court granted Robles-Vertiz's petition, vacated our judgment affirming his sentence, and remanded for our reconsideration in light of <u>Booker</u>.[3]  We again affirm Robles-Vertiz's sentence.

## II.  ANALYSIS

### A.  Standard of Review

As Robles-Vertiz raised his <u>Booker</u> claim for the first time in his supplemental petition for certiorari, we review it only in the presence of "extraordinary circumstances."[4]  Although we have yet to define the precise contours of "extraordinary circumstances," we

---

[3] <u>Alfaro v. United States</u>, 543 U.S. 1183 (2005).

[4] <u>United States v. Taylor</u>, 409 F.3d 675, 676 (5th Cir. 2005). More precisely, Robles-Vertiz's claim should be characterized as an assertion of "<u>Fanfan</u>" ⸺ not "<u>Booker</u>" ⸺ error.  It is clear that there was no "<u>Booker</u>" error or Sixth Amendment violation in this case because the only enhancement to Robles-Vertiz's sentence was for his prior conviction.  <u>See</u> <u>Booker</u>, 125 S. Ct. at 756 (reaffirming that "[a]ny fact (<u>other than a prior conviction</u>) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt") (emphasis added).  This case presents what we have termed <u>Fanfan</u> error because the district court sentenced Robles-Vertiz pursuant to a mandatory guidelines system.  <u>See</u> <u>United States v. Walters</u>, 418 F.3d 461, 463-64 (5th Cir. 2005). These semantics do not affect our analysis, however, because "a district court's <u>Fanfan</u> error will be treated the same as <u>Booker</u> error in cases where the sentencing predated those decisions." <u>United States v. Martinez-Lugo</u>, 411 F.3d 597, 601 (5th Cir.), <u>cert. denied sub nom</u>, <u>Martinez-Lugo v. United States</u>, 126 S. Ct. 464 (2005).

know that this standard is more onerous than the plain error standard.[5]  It follows, then, that if Robles-Vertiz cannot meet the requirements of plain error review, he certainly cannot satisfy the requirements of extraordinary circumstances review.[6]  And, Robles-Vertiz cannot meet the requisites of plain error review because he has failed to show that the error in his case affected his substantial rights.  We therefore need not address whether extraordinary circumstances exist.

Under plain error review, we will not remand for resentencing unless there is "(1) error, (2) that is plain, and (3) that affects substantial rights."[7]  If the circumstances in a case meet all three criteria, we may exercise our discretion to notice the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."[8]  Under Booker, a district court's sentencing of a defendant under the formerly-mandatory Sentencing Guidelines (1) constitutes error (2) that is plain.[9]  Whether the error affects substantial rights is a more complex inquiry in which the defendant bears the burden of proof.  He will carry this burden only if he can "show[] that the error 'must have

---

[5] Taylor, 409 F.3d at 676.

[6] Id.

[7] United States v. Cotton, 535 U.S. 625, 631 (2002).

[8] Id.

[9] United States v. Mares, 402 F.3d 511, 521 (5th Cir.), cert. denied sub nom, Mares v. United States, 126 S. Ct. 43 (2005).

4

affected the outcome of the district court proceedings.'"[10]  That may be shown, in turn, by the defendant's "demonstrat[ion of] a probability 'sufficient to undermine confidence in the outcome.'"[11] To demonstrate such a probability, the defendant must identify in the record an indication that the "sentencing judge —— sentencing under an advisory [Guidelines] scheme rather than a mandatory one —— would have reached a significantly different result."[12]  By all accounts, this burden is "difficult"[13] —— but not impossible[14] —— to meet.

## B.  Merits

In measuring a defendant's attempt to show that a plain error affected his substantial rights, our decisions have considered "two issues: first, whether the judge made any statements during sentencing indicating that he would have imposed a lesser sentence had he not considered the Guidelines mandatory; [and] second, the relationship between the actual sentence imposed and the range of sentences provided by the Guidelines."[15]  Robles-Vertiz does not

---

[10] Id. (quoting United States v. Olano, 507 U.S. 725, 734 (1993)).

[11] Id. (quoting United States v. Dominguez Benitez, 542 U.S. 74 (2004)).

[12] Id.

[13] United States v. Pennell, 409 F.3d 240, 254 (5th Cir. 2005); see also United States v. Rodriguez-Gutierrez, 428 F.3d 201, 203 (5th Cir. 2005) ("[T]he Supreme Court mandates that establishing [plain] error 'should not be too easy.'") (quoting United States v. Dominguez Benitez, 542 U.S. 74 (2004)).

[14] See Pennell, 409 F.3d at 245.

[15] Rodriguez-Gutierrez, 428 F.3d at 203.

contend that the district court made any statements expressing a preference for a lower sentence: He concedes that "the district court made no particular remarks disagreeing with the requirements of the mandatory guidelines," or otherwise indicating that it would have sentenced him differently under an advisory Guidelines scheme. Instead, Robles-Vertiz calls to our attention (1) "sympathetic circumstances surrounding [his] illegal reentry offense that support a finding of a reasonable likelihood of a lower sentence" ―― namely, his five children, his disability, his steady work in the United States, and the fact that he returned to the United States to be with his family; and (2) the facts that the district court (a) departed downward from the Guidelines' sentencing range before sentencing Robles-Vertiz, and (b) imposed the minimum sentence permitted by this lower sentencing range. He argues that "[t]hese circumstances" prove that the error in this case affected his substantial rights because, "despite the court's demonstrated willingness to reduce Robles[-Vertiz's] sentence, any . . . reduction [beyond the downward departure] based on the sympathetic circumstances . . . was virtually foreclosed." After all, contends Robles-Vertiz, "[u]nder the mandatory guideline scheme, departures were severely limited."

We hold that Robles-Vertiz has not carried his burden of showing that <u>Fanfan</u> error "'affected the outcome of [his] district court proceedings.'"[16] First, he concedes that he cannot identify any statements in the record demonstrating that the "sentencing

---

[16] <u>Mares</u>, 402 at 521 (quoting <u>Olano</u>, 507 U.S. at 734).

6

judge — sentencing under an advisory [Guidelines] scheme rather than a mandatory one — would have reached a significantly different result."[17]  And, Robles-Vertiz's other evidence fails to make up the difference.  True, his contention — that the district court granted him a downward departure because it viewed the pre-departure Guidelines sentencing range as being too severe — is plausible.  But it is beside the point as well.  We are concerned not with whether the district court thought that the pre-departure Guidelines sentence was too severe; rather, our concern is whether, under an advisory Guidelines system, the district court would have imposed a sentence different from that which it actually imposed, i.e., different from its post-departure sentence.  Although the district court's downward departure may plausibly indicate that it viewed the pre-departure sentence as too severe, it says nothing about the post-departure sentence.

Robles-Vertiz disagrees.  He contends that, had the then-mandatory Guidelines permitted the district court to take into account the "sympathetic circumstances" of his case, the court would have departed further downward than it did.  Again, though, this argument is unavailing; Robles-Vertiz can point to nothing in the record indicating that the district court would have relied on his individual circumstances to impose an even lower sentence than it did.  Moreover, Robles-Vertiz's contention that under the then-mandatory Guidelines the district court could not have considered his circumstances in ordering a less severe sentence is simply

---

[17] Id.

incorrect. Although the Guidelines state that "[p]hysical condition," "[e]mployment record," and "[f]amily ties and responsibilities" are "not ordinarily relevant in determining whether" to depart downward,[18] the truth is in the details: As the very terms of these Guidelines policy statements suggest, Robles-Vertiz's circumstances are not "ordinarily" relevant[19]; but they may be relevant in certain circumstances.[20] Had the district considered Robles-Vertiz's circumstances to be sufficiently compelling, then, it could have considered them. And, finally, even though the Guidelines are now advisory, sentencing courts still must consider them.[21] It is thus true that the district court could order a less onerous sentence on remand, but it is at least equally possible that the court could impose precisely the same one —— or even a greater one.

Robles-Vertiz next attempts to meet his burden by emphasizing the fact that the district court sentenced him at the bottom of the post-departure Guidelines range. Under our decision in United States v. Bringier, though, Robles-Vertiz's invocation of this fact

---

[18] See U.S.S.G. § 5H1.4, p.s. (2003) (physical condition); id. § 5H1.5, p.s. (employment record); id. § 5H1.6 (family ties and responsibilities).

[19] Emphasis added.

[20] See, e.g., U.S.S.G. § 5H1.4, p.s. (stating that "an extraordinary physical impairment may be a reason to depart downward"); id. § 5H1.6, comment (n.1) (providing that the sentencing court may take a family's loss of financial support into account in deciding to depart downward).

[21] Mares, 402 F.3d at 518-19.

8

alone is not enough to carry his burden.[22] And, contrary to Robles-Vertiz's argument, <u>Bringier</u> is not distinguishable from this case. Robles-Vertiz argues that unlike the defendant in <u>Bringier</u>, he presents sufficiently "sympathetic circumstances" to raise a reasonable likelihood that the district court would have imposed a lower sentence under an advisory Guidelines scheme. The differences between this case and <u>Bringier</u>, however —— for example, that Bringier was a "large-scale drug trafficker" while Robles-Vertiz is "an illegal alien who merely crossed the border" —— have no bearing on the question whether we may infer from a Guideline-minimum sentence that Robles-Vertiz would have been sentenced differently under an advisory scheme. The significance of any factual differences is, of course, borne out in the sentences imposed: Bringier was sentenced to a Guideline-minimum 30 years' imprisonment, compared to Robles-Vertiz's 41 months. Yet, in neither case may we conclude that the district court would have imposed a lesser sentence under an advisory scheme. Robles-Vertiz's attempt to distinguish <u>Bringier</u> is simply unconvincing. He has not carried his burden under the third prong of the plain error test. As Robles-Vertiz has failed to satisfy plain error

---

[22] <u>See</u> 405 F.3d 310, 318 n.4 (5th Cir. 2005) (reasoning that "[t]he fact that the sentencing judge imposed the minimum sentence under the Guideline range . . . alone is no indication that the judge would have reached a different conclusion under an advisory scheme."). Here, like in <u>Bringier</u>, "[t]he fact that the sentencing judge imposed the minimum sentence under the Guideline range" is, for all practical purposes, <u>standing alone</u>: Although Robles-Vertiz attempts to pair that fact with the district court's downward departure, as we have explained, the downward departure does not indicate what Robles-Vertiz claims it to, which leaves the district court's minimum sentence standing alone.

review, we do not reach his argument that the error in his sentencing seriously affected the fairness, integrity and public reputation of the proceedings.

Finally, in a last-ditch effort, Robles-Vertiz expresses disagreement with the mechanics of Mares's plain error standard. He recognizes that Mares forecloses this argument, but nonetheless raises the point to preserve a challenge to Mares's articulation of the plain error standard of review. He insists that we got it wrong in Mares, and that the plain error standard employed by other courts (the Sixth Circuit, for example[23]) gets it right. Mares is the settled law of this circuit, however, and we may revisit it only en banc or following a Supreme Court decision that actually or effectively overturns it.[24]

As Robles-Vertiz cannot satisfy plain error review, he certainly cannot demonstrate the presence of extraordinary circumstances that would entitle him to resentencing. We affirm his sentence.

### III.  CONCLUSION

As there exist no extraordinary circumstances or other grounds for relief, Robles-Vertiz's sentence is AFFIRMED. The Government's pending motion to reinstate our prior affirmance is DENIED as moot.

---

[23] See, e.g., United States v. Barnett, 398 F.3d 516 (6th Cir. 2005).

[24] See Hogue v. Johnson, 131 F.3d 466, 491 (5th Cir. 1997).

10