United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 21, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

04-60701

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GERRIAN LAMOND MCGILBERRY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

BENAVIDES, Circuit Judge:

A jury convicted Gerrian McGilberry of possession of a firearm by a convicted felon (Count 1) and possession of a firearm during and in relation to a drug trafficking offense (Count 2). The court sentenced McGilberry to forty-one months imprisonment on Count 1 and a consecutive term of sixty months on Count 2.

On appeal, McGilberry argues for the first time that his indictment was defective, there was a constructive amendment of his indictment, and the trial judge erred by treating the Sentencing

Guidelines as mandatory.  We AFFIRM McGilberry's conviction and sentence.

## I.  FACTS AND PROCEDURAL BACKGROUND

The evidence presented at trial showed that, on the night in question, police officers arrested J.L. Payne for domestic assault at a hotel where he was temporarily staying.  Payne informed the officers that somebody was supposed to deliver crack cocaine to his room later that evening.  Payne agreed with the officers to participate in a sting operation to catch the dealer.

McGilberry arrived at Payne's hotel room shortly thereafter accompanied by Elton Cooley.  Payne then called the officers and, using a code phrase, indicated that McGilberry had drugs with him. When the officers entered the room, McGilberry was sitting alone at a table with a handgun on it.  Payne testified that McGilberry had earlier taken the gun from his jacket and set it on the table.  The officers also found crack cocaine in a jacket that was hanging on McGilberry's chair.

McGilberry was indicted on a single charge of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). After pleading not guilty, a superseding indictment was issued with the additional charge of "*knowingly possess[ing] a firearm . . . during and in relation to a drug trafficking crime.*" *See* 18 U.S.C. 924(c)(1).  This second charge was added approximately one week before trial commenced, but McGilberry

2

expressly waived any right to additional preparation time.

The instructions allowed the jury to convict on this second charge only if it found that McGilberry "knowingly carried a firearm during and in relation to [his] alleged commission of the crime of possession of cocaine base with intent to distribute." The jury convicted McGilberry on both counts.

At sentencing, the district court calculated McGilberry's Guideline range as forty-one to fifty-one months for Count 1 and sentenced him to forty-one months, "the minimum that I can give him as to Count 1." McGilberry was then sentenced to a consecutive sixty-month sentence on Count 2, the minimum required by statute. 18 U.S.C. § 924(c)(1)(A).

## II. DISCUSSION

### A. Defective Indictment

McGilberry argues for the first time on appeal that the superseding indictment failed to charge him with a crime when it charged him with "possess[ing] a firearm . . . during and in relation to a drug trafficking crime." Because he did not raise this issue below, we review for plain error. FED. R. CRIM. PRO. 52(b). This standard requires a showing that there was "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Olano*, 507 U.S. 725, 732–35 (1993). Even after such a showing, we only correct the error where it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736 (*quoting United States v. Atkinson*, 297

3

U.S. 157, 160 (1936)).

*1. The Indictment was Plainly Erroneous*

The sufficiency of an indictment is measured by whether (1) each count contains all essential elements of the offense charged, (2) the elements are charged with particularity, and (3) the charge is specific enough to preclude a subsequent prosecution on the same offense. *United States v. Threadgill*, 172 F.3d 357, 366 (5th Cir. 1999).

McGilberry argues, the government concedes, and we find that the language used in the indictment was plainly erroneous. Section 924 refers to someone who either "uses or carries a firearm . . . during and in relation to any . . . drug trafficking crime," or someone "who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). When the conduct charged is *possession* of a firearm, the appropriate standard of participation is "in furtherance of" a crime. However, if the defendant *uses or carries* a firearm, the participation standard is "during and in relation to" a crime. Here, the indictment erroneously combined the "possession" prong of the statute with the "during and in relation to" prong, thereby failing to list the essential elements of any criminal conduct.[1] *See generally United States v. Ceballos-*

---

[1] While § 924(c)(1)(A) certainly targets two different types of conduct, we do not address whether it contains two distinct offenses or merely two methods to commit the same general offense. This question has been addressed by some of our sister circuits. *See, e.g.*, United *States v. Arreola*, 467 F.3d 1153, 1158 (9th Cir.

4

*Torres*, 218 F.3d 409, 412–15 (5th Cir. 2000).

This error is not necessarily harmless, as this court has recognized that "[t]here are situations where a possession would be 'during and in relation to' drug trafficking without 'furthering or advancing' that activity." *Id.* at 413. A brief history of § 924 helps to appreciate the differences between the two types of conduct that are criminalized therein.

An earlier version of § 924 criminalized only "us[ing] or carry[ing] a firearm during and in relation to" drug trafficking, without any reference to simple possession. *Id.* at 412. The Supreme Court grappled with the meaning of this provision as it pertained to two defendants, one who had a firearm in the trunk of a car while drugs were in the passenger compartment, and another who kept a gun locked away in his closet near some illegal drugs. *Bailey v. United States*, 516 U.S. 137 (1995). The Court found the evidence insufficient to convict either defendant under the "uses or carries" provision because the firearms were not "actively employed." *Id.* at 150–51.

The Court held that use of a firearm requires more than mere possession of an accessible firearm. *Id.* at 141, 143–44. "[N]early every possession of a firearm by a person engaged in drug

2006) (holding that while § 924 "names two distinct acts, it does not create two separate offenses"). It is unnecessary to resolve this issue here, and would be imprudent to do so because the parties did not directly address it.

trafficking would satisfy that standard, 'thereby eras[ing] the line that the statutes, and the courts, have tried to draw.'" *Id.* at 144 (*quoting United States v. McFadden*, 13 F.3d 463, 469 (1st Cir. 1994) (Breyer, C.J., dissenting)).

After the Supreme Court's opinion in *Bailey*, Congress broadened § 924 and added the "possession in furtherance of" language. *See Ceballos-Torres*, 218 F.3d at 413. In interpreting this new language, this circuit has held that mere possession is only criminalized where it "furthers, advances, or helps forward a drug trafficking offense." *Id.* at 414. The result is that the use or carrying of a firearm is illegal when it is "actively employed" during a drug crime, and mere possession is criminal only when it furthers or advances the drug trafficking offense.[2]

With that background in mind, it is apparent that the indictment in this case, referencing only "possess[ion] . . . during and in relation to" a drug trafficking crime failed to list

---

[2] The distinction is admittedly vague. It appears that the "possession in furtherance of" language completely swallows the "uses or carries during and in relation to" language. While this reading would render some of the statutory language superfluous, "surplusage in this statute is understandable given the history behind the amended version of § 924." *Ceballos-Torres*, 218 F.3d at 415.

It is difficult and maybe impossible to concoct a situation where a firearm is actively employed during a drug crime but not possessed in furtherance of that crime. A situation where a defendant entrusts a firearm to a third party for use during a joint criminal enterprise could arguably constitute use and active employment without possession, but we are unaware of any case holding as much.

6

all the elements of any offensive conduct. It combines the lower conduct standard with the lower standard of participation embodied in § 924, and would allow for a conviction where the firearm is not actively employed and does not advance or further the drug crime. In light of *Bailey* and *Ceballos-Torres*, that error is plain.

   *2. The Error Did not Affect the Fairness, Integrity, or Public Reputation of the Proceedings*

Having found that there was plain error below, the next step in the analysis is typically to consider whether the error affected McGilberry's substantial rights. *Olano*, 507 U.S. at 734. While this inquiry normally requires a finding that the error was prejudicial, it is unclear what type of showing must be made to prove that a defective indictment affected substantial rights. *See United States v. Cotton*, 535 U.S. 625, 632–33 (2002); *Olano*, 507 U.S. at 735 ("We need not decide whether the phrase 'affecting substantial rights' is always synonymous with 'prejudicial.'"). The Supreme Court has repeatedly avoided answering that question, and instead chosen to skip this step in the plain error analysis when defective indictments are at issue. *See, e.g.*, *Cotton*, 535 U.S. at 632–33; *Johnson v. United States*, 520 U.S. 461, 468–70 (1997).

We follow the Supreme Court's lead in turning directly to the fourth step of the plain error analysis. Even if the defective indictment in this case affected McGilberry's substantial rights, there are two reasons why it cannot be said that it affected the

7

fairness, integrity or public reputation of his judicial proceedings.

The first is that the evidence that McGilberry used or carried the firearm in question was "essentially uncontroverted." *See Cotton*, 535 U.S. at 633; *Johnson*, 520 U.S. at 470. On the evidence presented, it would have been impossible for a jury to find that McGilberry possessed the firearm but did not use or carry it. According to Payne's unrefuted testimony, McGilberry removed the gun from his jacket and set it on the table after he arrived in Payne's motel room. In addition to Payne, two officers and McGilberry's only witness all testified that the gun was sitting directly in front of Payne during the incident.

While this may not be overwhelming evidence in the abstract, the jury's verdict necessarily included a finding that McGilberry used or carried the firearm in question. The jury found that McGilberry possessed the gun that, according to every witness, sat on the table directly in front of him. The Supreme Court has explicitly stated that § 924 "certainly includes brandishing [and] displaying" a firearm as methods of using it. *Bailey*, 516 U.S. at 148; *see also Muscarello v. United States*, 524 U.S. 125, 136 (1998).

The only theory presented as to how the gun ended up on the table is that McGilberry carried and placed it there. In convicting McGilberry, the jury must have credited the

8

uncontroverted testimony that McGilberry (1) possessed the gun in question, (2) carried the gun to the motel room, and (3) displayed it openly.[3]  No other theory of possession was ever offered. Because the jury necessarily found each element contained in § 924, the erroneous indictment did not affect the fairness or integrity of the underlying proceedings.[4]

The second reason the error did not affect the proceedings' fairness is that the jury was properly instructed on the elements of § 924.  While the indictment erroneously charged McGilberry with simple possession, the jury was instructed to convict McGilberry only if it found that he "knowingly *carried* a firearm during and in relation to [his] alleged commission of the crime of possession of cocaine base with intent to distribute." (emphasis added).  The instructions continued that the firearm "must have some purpose, role, or effect with respect to the drug trafficking crime."  While the indictment was plainly erroneous, the jury instructions largely mitigated that error by properly conveying the elements of § 924.

B.  Constructive Amendment

McGilberry next complains that the jury instructions amounted

_____

[3] McGilberry never alleges that the prosecution changed or concealed its version of the events that led to this charge, so there is no complaint that the indictment provided him with inadequate notice.

[4] There are cases where a jury *could* conclude that a defendant possessed but did not use or carry a firearm during and in relation to a crime—if a defendant stashes a gun in a nearby dresser drawer for use if something goes awry, for instance—but this is not such a case.

to a constructive amendment of the indictment. A constructive amendment occurs when the jury is allowed "to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged." *United States v. Holley*, 23 F.3d 902, 912 (5th Cir. 1994); *United States v. Salinas*, 654 F.2d 319, 324 (5th Cir. 1981). Such modifications endanger a defendant's Fifth Amendment right to be "tried only on the charges presented in a grand jury indictment." *United States v. Chandler*, 858 F.2d 254, 256 (5th Cir. 1988).

McGilberry raises this argument for the first time on appeal, and we review for plain error. *United States v. Daniels*, 252 F.3d 411, 414 n.8 (5th Cir. 2001) (explaining that constructive amendments once required automatic reversal in this circuit, but have since been held susceptible to plain error review). As we did in *Daniels*, *id*., we assume without deciding that the first three requirements of plain error are met and turn directly to the fourth prong and ask whether any error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 414 (*quoting Olano*, 507 U.S. at 736).

Here, the indictment charged McGilberry with possession of a firearm during and in relation to the drug trafficking crime, whereas the jury instructions required a finding that he "knowingly *carried* a firearm during and in relation to the defendant's alleged commission of the crime." (emphasis added). The instructions

10

required a more demanding showing than the indictment, because carrying a firearm "involves some dominion or control, [and] connotes more than mere possession." *United States v. Ramon-Rodriguez*, 136 F.3d 465, 468 (1998).

In other words, the instructions only narrowed the grounds for conviction and did not expand the bases on which McGilberry could be convicted. "[A]n instruction which does not *broaden* the possible bases of conviction beyond what is embraced by the indictment does not constitute a constructive amendment," at least not a reversible one.[5] *United States v. Gonzales*, 436 F.3d 560, 577 (5th Cir. 2006) (emphasis in original) (*citing United States v. Miller*, 471 U.S. 130 (1985)).

In addition to narrowing the offense charged, the instructions correctly stated a grounds for conviction under § 924. In such circumstances, we regularly find that the error did not affect the fairness of the proceedings sufficient to reverse on plain error review. *See Daniels*, 252 F.3d at 414; *United States v. Reyes*, 102 F.3d 1361, 1365 (5th Cir. 1996). Because the constructive amendment narrowed the grounds for conviction and correctly listed

---

[5] This is not to say that the government can unabashedly charge § 924 offenses broadly and then narrow the charges through jury instructions depending on what the trial evidence shows. In such instances, a constructive amendment complaint might be successful if there were reason to believe the defendant lacked notice as to the underlying conduct he was being charged with. There is no such allegation here, so we cannot say that the fairness or integrity of the proceedings were seriously jeopardized by narrowing the grounds for conviction.

11

a statutory ground for conviction under § 924, any error did not render the proceedings unfair.

C. *Booker* Error

McGilberry's final argument is that the district court erred when sentencing him under a mandatory Guidelines scheme. *See United States v. Booker*, 543 U.S. 220 (2005). "Because he did not raise this argument in the district court, we review this argument for plain error." *United States v. Valenzuela-Quevedo*, 407 F.3d 728, 732 (5th Cir. 2005); *United States v. Mares*, 402 F.3d 511, 520–21 (5th Cir. 2005).

To succeed on plain error review, McGilberry must show that "the result would have likely been different had the judge been sentencing under the *Booker* advisory regime rather than the pre-*Booker* mandatory regime." *Mares*, 402 F.3d at 522. This requires McGilberry to "point to statements in the record by the sentencing judge demonstrating a likelihood that the judge sentencing under an advisory scheme rather than a mandatory one would have reached a significantly different result." *United States v. Pennell*, 409 F.3d 240, 245 (5th Cir. 2005). McGilberry has not satisfied this burden.

McGilberry relies primarily on (1) the district court's statement that the Guidelines "are severe for the crimes for which Mr. McGilberry has been convicted," and (2) the fact that McGilberry received the minimum sentence permitted by the

12

Guidelines. Taken in isolation, these facts might suggest that McGilberry would have received a lesser sentence under the proper advisory scheme, but they are insufficient to show a likelihood that a lesser sentence would have been imposed. *See United States v. Bringier*, 405 F.3d 310, 318 n.4 (5th Cir. 2005) (judge's indication that Guideline sentence was harsh and imposition of minimum sentence were insufficient to show defendant's substantial rights were violated).

Moreover, the judge's comments throughout sentencing make clear that he was disinclined to be overly lenient. He commented on McGilberry's criminal history and that "time after time he's received probation, suspended sentences, and . . . [t]hat has a tendency to cause the defendants at a federal level to think that they can violate all kinds of criminal laws." He continued that, "when a person is on a course of criminal conduct and self-destruction, that if he had some time in jail, it might cause him to resurrect himself and cause his family to help him do so."

In light of these comments, and absent any affirmative indication that the judge would have given McGilberry a lesser sentence under an advisory scheme, McGilberry has failed to show that his sentence was the result of plain error.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM McGilberry's conviction and sentence.

13