United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 20, 2005**

Charles R. Fulbruge III
Clerk

REVISED JULY 1, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30437

_____


UNITED STATES OF AMERICA

                    Plaintiff - Appellee

        v.

FRANCISCO D PINEIRO, also known as Frank Pineiro

                    Defendant - Appellant

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

**ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES**

Before KING, Chief Judge, and BARKSDALE, Circuit Judge.[*]

PER CURIAM:

Defendant Francisco D. Pineiro was convicted in the United

States District Court for the Western District of Louisiana of

violating the federal controlled-substances laws.  During

sentencing, the district judge made various fact findings to

determine Pineiro's sentencing range under the then-mandatory

---

[*]    Judge Pickering was a member of the original panel but resigned from the Court on December 8, 2004 and therefore did not participate in this decision.  This matter is being decided by a quorum.  28 U.S.C. § 46(d).

U.S. Sentencing Guidelines.  Pineiro objected to these judge-made findings.  His objections were overruled, and he subsequently appealed his sentence to this court.  Reasoning that the holding in Blakely v. Washington, 124 S. Ct. 2531 (2004), did not apply to the U.S. Sentencing Guidelines, we affirmed Pineiro's sentence.  United States v. Pineiro, 377 F.3d 464 (5th Cir. 2004).  Pineiro then filed a petition for certiorari to the Supreme Court.  The Supreme Court granted certiorari, vacated this court's judgment, and remanded the case for further consideration in light of United States v. Booker, 125 S. Ct. 738 (2005).  Because we find that the Sixth Amendment Booker error was not harmless, we now VACATE Pineiro's sentence and REMAND to the district court for resentencing.

## I. BACKGROUND

Pineiro was convicted by a jury of conspiracy to distribute "less than 50 kilograms" of marijuana and "50 grams or less" of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1]  The Presentence Investigation Report ("PSR") indicated that Pineiro was responsible for drug amounts much greater than the amounts found by the jury.  Specifically, the PSR stated that Pineiro was

---

[1]  Pineiro was also convicted of: (1) possessing and aiding and abetting possession with intent to distribute approximately three-fourths of a pound of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (2) possessing and aiding and abetting possession with intent to distribute approximately twenty-one pounds of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

responsible for 453.6 kilograms of marijuana and 1,048.95 grams of cocaine.  Based on these quantities of drugs, the PSR concluded that Pineiro's base offense level for the conspiracy conviction was twenty-eight.  See UNITED STATES SENTENCING GUIDELINES [hereinafter "U.S.S.G." or the "Guidelines"] § 2D1.1(c).  The PSR further recommended that Pineiro receive a four-level sentence enhancement under U.S.S.G. § 3B1.1(a) for being an "organizer or leader" of the conspiracy.  The resulting total offense level of thirty-two, when combined with Pineiro's criminal history category of I, yielded a Guidelines range of 121 to 151 months.

Pineiro objected to the PSR on several grounds.  First, he objected to the base offense level of twenty-eight, arguing that using the larger drug quantities would violate the rule articulated in Apprendi v. New Jersey, 530 U.S. 466 (2000). Second, he objected to the four-level "organizer or leader" enhancement on the ground that the evidence at trial did not support such a factual finding, but he did not raise a constitutional claim regarding this enhancement.  The district court overruled Pineiro's objections and sentenced him to 121 months on the conspiracy conviction.[2]  Pineiro appealed his sentence to this court.

---

[2]  Pineiro was also sentenced to sixty months on each of the possession with intent to distribute convictions, with the sentences to run concurrently.

While Pineiro's appeal was pending before us, the Supreme Court decided Blakely. At our request, the parties submitted supplemental briefing to assess Blakely's impact. Pineiro contended that the Supreme Court's holding in Blakely applied to the Guidelines and that his sentence must be vacated and the case remanded for resentencing.[3] This court disagreed and affirmed Pineiro's sentence. Pineiro, 377 F.3d at 464. Pineiro then filed a petition for certiorari.

On January 12, 2005, the Supreme Court decided Booker, in which it held that when a sentencing judge bound by mandatory Guidelines has increased the defendant's sentencing range based on facts not found by a jury or admitted by the defendant, the sentence violates the defendant's Sixth Amendment right to a jury trial. Booker, 125 S. Ct. at 755-56. In its Remedy Opinion, the Court effectively converted the Guidelines from a mandatory regime to an advisory regime. Id. at 756. Accordingly, the Court vacated our judgment in Pineiro, and it remanded the case to us for further consideration in light of Booker. On March 3, 2005, we ordered the parties to file letter briefs setting forth the disposition we should make of this appeal in light of Booker. In his letter brief, Pineiro argues that the district court

---

[3] As to the sentence enhancement for being a leader or organizer, Pineiro did not claim that his fact-based objection to the PSR was sufficient to preserve the constitutional issue; he did, however, claim that the district court committed reversible plain error in light of Blakely.

4

committed reversible error and that this court must therefore remand for resentencing. The government, on the other hand, argues that the district court's error was harmless.

## II. ANALYSIS

"[I]f either the Sixth Amendment issue presented in <u>Booker</u> or the issue presented in <u>Fanfan</u> is preserved in the district court by an objection, we will ordinarily vacate the sentence and remand, unless we can say the error is harmless under Rule 52(a) of the Federal Rules of Criminal Procedure."[4] <u>United States v.</u>

---

[4] This court has previously noted that there has been some suggestion that harmless error will not apply to preserved Sixth Amendment <u>Booker</u> claims. <u>See</u> <u>United States v. Akpan</u>, No. 03-20875, 2005 WL 852416, at *12 n.55 (5th Cir. Apr. 14, 2005) (citing <u>United States v. Oliver</u>, 397 F.3d 369, 381 (6th Cir. 2005)); <u>cf.</u> <u>United States v. Rodriquez</u>, No. 04-12676, 2005 WL 895174, at *20 (11th Cir. Apr. 19, 2005) (Tjoflat, J., dissenting). That view originates from the statement in <u>Booker</u> that "in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine." 125 S. Ct. at 769. To conclude that cases involving Sixth Amendment <u>Booker</u> error are not subject to harmless error analysis not only reads too much into that sentence, <u>see</u> <u>Rodriguez</u>, 2005 WL 895174, at *4 (Carnes, J., concurring) (stating that drawing instruction from Supreme Court passages through the use of a negative pregnant is generally unsatisfactory and particularly unsatisfactory in this case because it contradicts <u>Booker</u>'s clear directive that every <u>Booker</u> appeal will not lead to a new sentencing hearing because reviewing courts should apply ordinary prudential doctrines such as plain error), but it also contradicts this court's precedent. <u>See</u> <u>United States v. Mares</u>, 402 F.3d 511, 520 n.9 (stating that harmless error applies to preserved Sixth Amendment error claims). Furthermore, those circuits that have addressed preserved Sixth Amendment <u>Booker</u> claims to date have applied harmless error. <u>See, e.g.</u>, <u>United States v. Medley</u>, No. 03-2026, 2005 WL 914848 (10th Cir. Apr. 21, 2005); <u>United States v. Coumaris</u>, 399 F.3d 343, 351 (D.C. Cir. 2005). Thus, harmless-error analysis applies.

5

<u>Mares</u>, 402 F.3d 511, 520 n.9 (5th Cir. 2005); <u>see also</u> <u>United States v. Olano</u>, 507 U.S. 725, 734 (1993) (noting that harmless error applies when a defendant makes a timely objection to an error). Rule 52(a) states that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). An error affects substantial rights (i.e., is prejudicial) if it affects the outcome of the district court proceedings. <u>Olano</u>, 507 U.S. at 734; <u>United States v. Akpan</u>, No. 03-20875, 2005 WL 852416, at *12 (5th Cir. Apr. 14, 2005); <u>United States v. Munoz</u>, 150 F.3d 401, 413 (5th Cir. 1998). Consequently, an error is deemed harmless if it did not affect the outcome of the district court proceedings. <u>Olano</u>, 507 U.S. at 734; <u>Akpan</u>, 2005 WL 852416, at *12; <u>Munoz</u>, 150 F.3d at 413. The government bears the burden of showing that the error was harmless beyond a reasonable doubt. <u>Olano</u>, 507 U.S. at 734 (noting that the inquiry to determine prejudice is the same between plain-error and harmless error, but that the defendant, rather than the government, bears the burden of persuasion with respect to prejudice under plain error review); <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967) (holding that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"); <u>Akpan</u>, 2005 WL 852416, at *12. Thus, to show harmlessness, the government must demonstrate beyond a reasonable doubt that the Sixth Amendment <u>Booker</u> error

6

did not affect the sentence that the defendant received. Akpan, 2005 WL 852416, at *12 (citing Munoz, 150 F.3d at 413, and Chapman, 386 U.S. at 24).

Pineiro's Apprendi-based objection to the PSR's drug-quantity calculations was sufficient to preserve his Booker claim because he challenges his sentence based on the same constitutional violation addressed by both cases.[5] See Booker, 125 S. Ct. at 756-57 (reaffirming and applying to the federal sentencing guidelines the holding in Apprendi that any fact (other than a prior conviction) that increases the penalty of a crime beyond the statutory maximum must be admitted by the defendant or proved to a jury beyond a reasonable doubt); see also United States v. Bailey, 405 F.3d 102, 113-14 (1st Cir. 2005) (reviewing a defendant's Booker claim under plain error because he made no arguments in the district court concerning the constitutionality of the Guidelines or the application of the Guidelines to his sentence under Blakely or Apprendi); United States v. Windrix, Nos. 04-5016, 04-5020, 04-5021, 2005 WL 1023398 (10th Cir. May 3, 2005) (rejecting the government's argument that the defendants did not preserve their Booker objection when they objected to the enhancements made to their

_____

[5] In our previous opinion in this case, we concluded that Pineiro's Apprendi-based objection was sufficient to preserve his Blakely challenge to his sentence. Pineiro, 377 F.3d at 467 n.4 (citing United States v. Doggett, 230 F.3d 160, 162-63, 165 (5th Cir. 2000)).

sentences under <u>Apprendi</u>); <u>United States v. Dowling</u>, 403 F.3d 1242, 1246 (11th Cir. 2005) (concluding that the defendant did not preserve a <u>Booker</u> claim because he did not make a constitutional objection at sentencing, which includes citing <u>Apprendi</u>, the Sixth Amendment, or the defendant's right to have facts found by a jury instead of a judge).  Accordingly, we review for harmless error.  Here, there is no question that the district court committed Sixth Amendment <u>Booker</u> error by enhancing Pineiro's sentence pursuant to its finding that he was responsible for a greater quantity of drugs than that for which the jury found him responsible.  See <u>Booker</u>, 125 S. Ct. at 738. The question remains whether that error was harmless.  Thus, we must ascertain whether the government has met its burden of showing beyond a reasonable doubt that the error did not affect the outcome of the district court proceedings, i.e., that the district court would have imposed the same sentence absent the error.

The government points to evidence in the record in an attempt to meet its burden.  It first points to the fact that the sentencing judge stated that he knew of no reason to depart upward or downward and thus that he would adhere to the Guidelines.  It is clear, however, upon reading the sentencing judge's remarks in their entirety that he could find no reason to depart upwardly or downwardly under the provisions of the then-mandatory Guidelines precisely because he was restricted by the

8

Guidelines.[6]  The judge's statement certainly does not suggest that even under an advisory scheme he would know of no reason to depart upwardly or downwardly.

Secondly, the government notes that at no point during the sentencing hearing did the judge say that Pineiro's Guidelines range was too high in light of his offense, or that the court would impose a lower sentence if not bound by the Guidelines. Although this argument would be persuasive under plain-error review, this argument fails to show that the preserved error was harmless.  It is the government that must show that the sentencing judge would have imposed the same sentence under an advisory sentencing scheme.  The judge's silence as to whether or not he would have imposed a different sentence under an advisory regime does not satisfy this burden.  If we were to accept this

---

[6]  The sentencing judge stated:

Mr. Pineiro, you do understand, and I'm sure your attorney has told you, that the Court in meting out sentencing, this and virtually every other case that comes before the Court, I'm bound by sentencing guidelines [that are] prepared by the United States Sentencing Commission.  So I have to operate within those [parameters], unless there are certain reasons why the guidelines can be bent[.  F]or example, with substantial cooperation, the government can file a motion for a downward departure based on substantial assistance by a defendant, and the Court can depart.  In that regard, the Court can also depart upward in certain cases where there are . . . aggravating circumstances not fully taken under consideration by the guidelines.  I don't know of [any] reason in this case why either –- there should be either an upward or a downward departure from the guidelines.  So to that extent, the Court will adhere to the guidelines.

9

argument to find that the error was harmless, we would effectively be relieving the government of its burden and placing it on the defendant.

Finally, the rest of the government's arguments simply attempt to undercut Pineiro's assertions that the sentencing judge made statements tending to suggest he would have imposed a lower sentence under an advisory scheme.  First, the government argues that the sentencing judge's displeasure with sentencing Pineiro was not based on the fact that he was bound by mandatory Guidelines, but rather that Pineiro maintained his innocence, which in turn caused his family to question the integrity of the justice system.  Second, the government asserts that the sentencing judge's statement that drug sentences were "pretty harsh" was part of a larger complaint about the relatively lenient sentences the Guidelines provided for economic crimes. These arguments are clearly insufficient to satisfy the government's arduous burden.  We therefore conclude that the government has failed to meet its burden of showing beyond a reasonable doubt that the district court would have imposed the same sentence under an advisory scheme.[7]  Thus, Pineiro is entitled to resentencing in accordance with Booker.

### III. CONCLUSION

---

[7]  Because we remand for resentencing based on the drug-quantity enhancement, we do not reach Pineiro's argument with respect to the organizer-or-leader enhancement.

10

Accordingly, we VACATE the defendant's sentence, and REMAND for resentencing.