United States Court of Appeals
Fifth Circuit

**F I L E D**

November 18, 2005

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 04-11239
_____

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

PAUL JACOB AGUIRRE,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(No. 2-04-CR-034)

_____

Before BARKSDALE and CLEMENT, Circuit Judges, and ENGELHARDT,[*] District Judge.

EDITH BROWN CLEMENT, Circuit Judge:[**]

Paul Jacob Aguirre was convicted of two counts of embezzlement pursuant to 18 U.S.C. §

656 and sentenced to two concurrent 46-month terms of imprisonment. Aguirre appeals his

underlying conviction on several grounds and his resulting sentence as contrary to *United States v.*

*Booker*, 125 S. Ct. 738 (2005). For the following reasons, while we affirm Aguirre's conviction, we

_____

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

[**]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and
is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

-1-

vacate his sentence and remand to the district court for resentencing.

## I.  FACTS AND PROCEEDINGS

On April 6, 2004, Paul Jacob Aguirre was indicted on two counts of violating 18 U.S.C. § 656 (titled "Theft, embezzlement, or misapplication by bank officer or employee").  Prior to that time, he had been a senior teller at Amarillo National Bank.  In his capacity as senior teller, Aguirre had authority to be in the bank after closing and to check cash out of the vault.  Aguirre also had the combination for the bank's ATM, from which money went missing, and access to the outgoing mail, from which mailings had been taken and altered.

The Government presented these circumstantial facts at trial.  The Government also provided direct evidence of Aguirre's guilt.  In order to cover up the missing money, which was the basis of the indictment, the perpetrator had altered or falsified internal bank audit reports.  The Government called to the stand two of Aguirre's co-workers, each of whom identified as Aguirre's the handwriting on the altered or false audit reports that helped conceal the money.  The Government also presented evidence that Aguirre deposited $21,900 into his personal bank account during this period, in addition to his direct payroll deposits.

The $23,000 charged in the second count went missing in October 2004.  A vault security camera recorded Aguirre taking $23,000 from the vault, and ATM records from the same day showed that Aguirre made the cash-out ticket for the corresponding withdrawal.  The next day, the usually punctual Aguirre did not come to work.

Following a jury trial, Aguirre was found guilty of both counts in June 2004.

## II.  DISCUSSION

Aguirre challenges both his conviction and his sentence.  We address each challenge seriatim.

A.      Aguirre's Arguments Against Conviction

Aguirre's initial arguments attack the grounds of his conviction.  We find none of his arguments availing and affirm his conviction.

(1)      Sufficiency of the Evidence

Aguirre argues on appeal that the evidence presented at trial is insufficient to sustain his conviction.  At the close of the Government's case, Aguirre moved for acquittal based on insufficiency of the evidence.  Normally, in assessing claims of insufficient evidence, we review the evidence in the light most favorable to the jury verdict to determine if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt.  *United States v. Romero-Cruz*, 201 F.3d 374, 378 (5th Cir. 2000).  However, since Aguirre failed to renew the motion for acquittal at the close of all the evidence, we review under a stricter standard.  Our review is limited to whether "a manifest miscarriage of justice" has occurred, which is found only if "the record is devoid of evidence pointing to guilt."  *United States v. Green*, 293 F.3d 886, 895 (5th Cir. 2002) (internal citation omitted).

The requirements for conviction under 18 U.S.C. § 656 are met if the Government proves that the defendant (1) was an employee; (2) of a federally insured bank; (3) when he embezzled or willfully misapplied monies, funds, or credits belonging to or intrusted to the care of the bank; and (4) the amount of monies, funds, or credits at issue was more than $1000.  *See* 18 U.S.C. § 656.

At trial, the Government produced voluminous evidence that Aguirre committed the crimes for which he was indicted.  Aguirre, as senior teller, was alone in the bank after closing, had the combination to the ATM from which some of the money was stolen, and had authority to sign money out of the vault.  A security camera recorded Aguirre removing $23,000 from the bank's vault on

October 9, 2003, and other evidence presented at trial showed $23,000 was unaccounted for that same day. Testifying as lay witnesses, two of Aguirre's co-workers with extensive exposure to Aguirre's handwriting said they recognized as Aguirre's the writing on falsified or altered audit sheets, the unaltered versions of which would have alerted the bank earlier to possibly criminal accounting discrepancies. Aguirre's bank accounts showed over $21,000 in non-salary deposits, which Aguirre claimed were gambling profits, but which a jury could have concluded were illegal embezzlement proceeds.

Based on the evidence, Aguirre could not meet even the more lenient standard of reviewing sufficiency of the evidence had his counsel renewed the motion for acquittal at the close of evidence. Accordingly, he certainly has not shown that letting the conviction stand would constitute a "manifest miscarriage of justice." *See Green*, 293 F.3d at 895.

(2)     Nonexpert Handwriting Testimony

At trial, Aguirre objected to the district court's admission of incriminating lay testimony regarding Aguirre's handwriting on certain altered or falsified audit reports. On appeal, Aguirre argues that his conviction should be reversed because the district court erred in allowing this testimony. We review a district court's decision to admit or exclude evidence for abuse of discretion. *See United States v. Cantu*, 167 F.3d 198, 203 (5th Cir. 1999).

As Aguirre concedes, expert testimony is not always required to identify handwriting. *See United States v. Kilgore*, 518 F.2d 496, 498 (5th Cir. 1975). FED. R. EVID. 701 and 901 govern the admission of nonexpert opinion on handwriting. Rule 901 allows handwriting identification by nonexpert opinion "based upon familiarity not acquired for purposes of the litigation." FED R. EVID. 901(b)(2). Rule 701 permits lay opinion testimony when the opinion is "(a) rationally based on the

-4-

perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED R. EVID. 701.

Aguirre asserts that the Government did not lay a proper foundation for the two witnesses' testimony, because the witnesses did not testify that they had seen Aguirre's handwriting in white correction fluid, as was the handwriting on the altered audit reports. We find this argument unavailing. At trial, the Government elicited that one witness had worked alongside Aguirre for at least seven years, and the other for about one year. Both witnesses testified they had extensive experience viewing Aguirre's handwriting and, specifically, the way he wrote numbers. One witness explicitly stated he could recognize Aguirre's numerical handwriting.

Aguirre also maintains that authenticating the handwriting at issue required expert opinion and, therefore, was not a permissible subject for lay opinion, because it was numerical in form and written over white correction fluid or tape. Aguirre provides no authority for his argument, and we find it is without merit.

The Government properly laid the foundation for each witness; the testimony squarely falls within permissible lay opinion under Rules 701 and 901. The district court did not abuse its discretion in permitting the witnesses to testify.

(3)     Aguirre's Excluded Summary Tax Return

At trial, Aguirre objected to the district court's decision to exclude from evidence a computer printout that he purported was a summary of his tax return. Aguirre contended that the summary would have shown certain gambling winnings, which would have provided an alternative explanation for the non-salary deposits the Government attributed to bank theft. On appeal, Aguirre argues that

the district court's exclusion constitutes reversible error.  Again, we review a district court's decision to admit or exclude evidence for abuse of discretion.  *Cantu*, 167 F.3d at 203.

Aguirre failed to prove that the exhibit qualified for admission as a summary under FED. R. EVID. 1006.  He provided no original documentation to the Government either prior to or at the time of his attempt to introduce the exhibit, as provided by the rule.  His argument mainly rests on the belief that it would have been reasonable for the district court to admit the exhibit.  Given Aguirre's failure to conform to the requirements of Rule 1006, we conclude the district court did not abuse its discretion in excluding the purported summary of Aguirre's tax return.

(4)     Improper Prosecutorial Remarks

Aguirre objected at trial to three separate comments the prosecutor made during closing arguments.  In analyzing improper prosecutorial remarks, we first assess whether, in fact, the remarks were improper, and, second, whether the remarks affected "substantially the defendant's right to a fair trial."  *United States v. Murrah*, 888 F.2d 24, 27 (5th Cir. 1989).  In determining the impact of the remarks on the defendant's right to a fair trial, we "consider (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt."  *United States v. Ramirez-Velasquez*, 322 F.3d 868, 875 (5th Cir. 2003) (quoting *United States v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir. 1995)).  We will overturn a conviction if the prosecutor's "remarks cast serious doubt on the correctness of the jury's verdict." *United States v. Iredia*, 866 F.2d 114, 117 (5th Cir. 1989).  If the district court reacted to the disputed comments at trial, then we will give the trial judge's "on-the-scene assessment of the prejudicial effect . . . considerable weight."  *United States v. Fields*, 72 F.3d 1200, 1207 (5th Cir. 1996).

a.    "Pseudo-Criminal" Activity

Aguirre objected to the prosecutor's description of gambling as activity that is "pseudo-criminal in some cases."  Although the district court sustained the objection, it did not explicitly instruct the jury to ignore the comment.  While the comment borders on suggesting extrinsic criminal activity, no prejudicial effect came of it.  The district court immediately sustained the objection and, regardless, the amount of evidence supporting Aguirre's conviction renders any impact of the remark harmless.

b.    Audit Irregularities

Aguirre objected to the prosecutor's comment that, "Every time there was an irregularity in the audit, Paul Aguirre is involved."  Like the district court, which overruled the objection, we conclude that the remark was not improper.  Since the remark was not improper, there is no need to assess its potential prejudice.

c.    Unreleased Details of a Crime

Aguirre objected to the prosecutor's comment that, "Police often times will not release details of a crime because that is how they catch a suspect."  The district court instructed the prosecutor to rephrase the statement, which the prosecutor did.  The rephrased remark elicited no further objection from Aguirre.  While the original comment suggested that the Government had more evidence proving Aguirre's guilt than could be presented at trial, it is clear that the prosecutor only, and inartfully, was attempting to draw an inference from the coincidence of Aguirre's absence from work on the very day that authorities noted one of the thefts.  The remarks had no impact on the fairness of the trial.

(5)    *Brady* Material

Aguirre contends on appeal that the Government failed to disclose exculpatory evidence of a balanced bank audit, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). To prove a *Brady* violation, a defendant must show (1) the prosecution suppressed evidence; (2) the evidence was favorable; and (3) the evidence was material. *United States v. Green*, 46 F.3d 461, 464 (5th Cir. 1995). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Additionally, we have held that a defendant must demonstrate that discovery of the alleged evidence was not the result of a lack of due diligence: "The State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence." *Rector v. Johnson*, 120 F.3d 551, 558–59 (5th Cir. 1997).

Aguirre argues that the alleged audit, performed in early 2003, tended to show that he could not have been methodically stealing money since late 2002, which would be contrary to the indictment. Importantly, the Government denies the existence of any such audit. The only evidence of a potential audit came in testimony at trial, but the same testimony also shows that Aguirre was physically present during the alleged audit. Even assuming the existence of such an audit, the protections of *Brady* do not require the Government to provide potentially exculpatory information that is already known to the defendant. Regardless, the evidence of Aguirre's guilt was overwhelming, and any perceived benefit from the alleged audit would not have affected the conviction. Aguirre's *Brady* claim is without merit.

B. Aguirre's *Booker* Claims

Since each of Aguirre's arguments in favor of overturning his conviction fails, we now review his claim that his sentence should be overturned. At trial, Aguirre challenged his sentence as contrary to *Blakely v. Washington*, 542 U.S. 296 (2004), but the district court overruled the objection. Aguirre argues on appeal that the district court erred in increasing his offense level based on special offense characteristics neither admitted by him nor proven to a jury beyond a reasonable doubt, in violation of *United States v. Booker*. A *Blakely* error raised at trial prior to the Supreme Court's decision in *Booker* preserves a *Booker* error for appeal. *United States v. Saldana*, 427 F.3d 298, 313–14 & n.67 (5th Cir. 2005).

We will normally vacate a preserved *Booker* error unless the error is harmless. *United States v. Mares*, 402 F.3d 511, 520 n.9 (5th Cir. 2005), *cert. denied*, — U.S. —, 126 S. Ct. 43 (2005). An error is harmless if it did not affect the district court proceedings, and the burden falls on the Government to prove the error was harmless beyond a reasonable doubt. *United States v. Olano*, 507 U.S. 725, 734 (1993); *United States v. Pineiro*, 410 F.3d 282, 285 (5th Cir. 2005); *United States v. Akpan*, 407 F.3d 360, 377 (5th Cir. 2005). To carry its "arduous burden," the Government must prove beyond a reasonable doubt that the district court would have imposed the same sentence absent the error. *Pineiro*, 410 F.3d at 287.

Though the Government concedes that the district court erred in enhancing Aguirre's sentence pursuant to the presumed-mandatory U.S. Sentencing Guidelines, the Government nonetheless maintains that the error was harmless. The Government's bare evidence for its claim is that the district court refused to sentence Aguirre at the lowest end of the Guidelines range and remarked that Aguirre's sentence addresses the objectives of punishment and deterrence. We conclude that the mere fact that the district court sentenced the defendant to the mid-point of the Guidelines range,

standing alone,[1] does not meet the Government's strict burden of proving harmless error beyond a reasonable doubt. *See United States v. Garza*, — F.3d —, No. 04-10813, 2005 WL 2757503, at \*3 (5th Cir. Oct. 25, 2005) ("It is equally possible . . . that the court's sentence [in the middle of the applicable range] reflected a judgment about the appropriate sentence for . . . [the defendant] relative to other defendants with the same Guidelines range rather than a judgment as to the appropriate absolute sentence.").

The Government cannot show that the error was harmless beyond a reasonable doubt. Because of the *Booker* error, we vacate Aguirre's sentence and remand the case to the district court for resentencing.

## III.  CONCLUSION

We AFFIRM Aguirre's conviction, VACATE his sentence, and REMAND for resentencing.

---

[1] We do not credit the Government's argument that the *Booker* error is harmless because the district court remarked that Aguirre's sentence met the goals of punishment and deterrence. The district court's boiler-plate language is irrelevant because it was required by statute to inform every sentence with those predicate considerations.  18 U.S.C. § 3553(a)(2).