United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 1, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-40009
Summary Calendar

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

EVLYN RODRIGUEZ,

                                        Defendant-Appellant.

---------------------
Appeal from the United States District Court
for the Southern District of Texas
(5:04-CR-1217-ALL)
---------------------

Before KING, WIENER, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

A jury convicted Defendant-Appellant Evlyn Rodriguez of conspiracy to possess with intent to distribute and possession with intent to distribute less than fifty kilograms of marihuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) and (b)(1)(D). Rodriguez contends that the evidence was insufficient to support her conviction and that the district court committed reversible error under United States v. Booker, 543 U.S. 220 (2005), when it

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentenced her under the mandatory Guidelines regime that was found unconstitutional in Booker.

As Rodriguez properly preserved the sufficiency issue by moving for a judgment of acquittal on both indictment counts at the close of the government's case and at the close of all evidence, we review this issue de novo. See United States v. Izydore, 167 F.3d 213, 219 (5th Cir. 1999). In evaluating sufficiency of evidence, we view all evidence and all reasonable inferences drawn from it in the light most favorable to the verdict. Id.

Circumstantial evidence adduced at Rodriguez's trial established "1) the existence of an agreement between two or more persons to violate federal narcotics laws; 2) the defendant's knowledge of the agreement; and 3) the defendant's voluntary participation in the agreement." See United States v. Gonzales, 79 F.3d 413, 423 (5th Cir. 1996). Evidence also indicated that Rodriguez knowingly possessed with intent to distribute the controlled substance. See United States v. Solis, 299 F.3d 420, 446 (5th Cir. 2002).

When we view it in the light most favorable to the verdict, the evidence establishes that at least three people —— Rodriguez, Erasmo Gallegos, and "Ricky" —— were involved in an agreement to violate federal narcotics laws. Gallegos, Rodriguez's co-worker, borrowed their boss's vehicle so that Gallegos could make a trip from the vicinity of Arlington, Texas to Laredo. While driving that vehicle alone on the following day Rodriguez was stopped at a

checkpoint.  In the vehicle's undercarriage, bundles of marihuana weighing in the aggregate approximate 22.9 kilograms were found.

Gallegos's had told his boss that the vehicle was being borrowed to visit his sick grandmother.  She continued the sick-grandmother theme first when Rodriguez told one of the agents at the checkpoint that she had traveled from Arlington to Laredo to visit her sick grandmother, and again when she told a different agent that she went to Laredo to visit Gallegos's sick grandmother. The inconsistencies in the stories also indicate that Rodriguez was either nervous or lying to law enforcement personnel, both of which are indicative of knowing participation in an agreement to break the law.  See United States v. Paul, 142 F.3d 836, 840 (5th Cir. 1998).

As for knowledge of the existence of the conspiracy and the presence of marihuana in the vehicle, the value of the marihuana concealed in the undercarriage was between $200 to $700 per pound. A jury could infer that a drug smuggler would not be likely to entrust such a large quantity of drugs to a person with no knowledge of their presence.  See United States v. Ramos-Garcia, 184 F.3d 463, 465-66 (5th Cir. 1999).  Furthermore, several law enforcement officials testified that Rodriguez appeared to be nervous while the vehicle was being inspected at the checkpoint. From this testimony, the jury could infer that Rodriguez's nervousness was the result of her knowledge of (1) the presence of the contraband in the vehicle, and (2) the likelihood that it would

3

be discovered. See United States v. Jones, 185 F.3d 459, 464 (5th Cir. 1999). Such a large quantity of the controlled substance is indicative that Rodriguez was acting with the intent to distribute it. See United States v. Prieto-Tejas, 779 F.2d 1098, 1101 (5th Cir. 1986).

Additionally, Rodriguez's statements implicated "Ricky" as a third person in the conspiracy. Rodriguez told officials that while she was in Laredo, she met Ricky, who told her that the taillight on the vehicle was broken. Rodriguez told the officials that she let Ricky take the vehicle for an hour to have the taillight fixed. In contradiction, however, the government produced testimony indicating that the vehicle's taillights were in working order before Gallegos took the vehicle. Also, it is unlikely that a person would allow an unaccompanied stranger, whose last name she did not know, to take her boss's vehicle to get it fixed.

Additional evidence establishes that Rodriguez took an indirect route from Laredo to return to Arlington. This justifies an inference that she did so for the purpose of avoiding apprehension.

We conclude from all this that the jury acted rationally in determining that Rodriguez was an active participant in the conspiracy to transport the drugs and that she was attempting to avoid detection. See United States v. Lopez-Urbina, __ F.3d __, 2005 WL 1940118, *3 (5th Cir. Aug. 15, 2005) (this court does not

consider whether the jury correctly determined guilt or innocence but rather whether the jury's decision was rational). The jury also acted rationally in concluding that Rodriguez knowingly possessed marijuana with the intent to distribute it. See id. Thus, the evidence was sufficient to support Rodriguez's conviction.

Turning to Rodriguez's Booker argument, we are convinced that the district court did commit error when it sentenced Rodriguez under the pre-Booker, mandatory Guidelines regime. See United States v. Walters, 418 F.3d 461, 463-64 (5th Cir. 2005). Conceding this error, the government nevertheless contends that the error was harmless. To prevail, the government must prove that such error was harmless beyond a reasonable doubt. Id. at 464. The government's arguments do not establish that the outcome of the district court proceedings was not affected by the imposition of Rodriguez's sentence under the mandatory Guidelines. See id. at 463-64; United States v. Pineiro, 410 F.3d 282, 285-86 (5th Cir. 2005) (Booker error). Additionally, the sentencing transcript reveals that the district court did not provide a clear indication of how consideration of the Guidelines as mandatory affected Rodriguez's sentence. As the government has not shown that the sentencing judge would have imposed the same sentence under an advisory sentencing scheme, see Pineiro, 410 F.3d at 285-86, it has failed to prove harmlessness beyond a reasonable doubt. Although

5

we affirm her conviction, we vacate Rodriguez's sentence and remand the case for resentencing.

CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.